IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARIUS PHILILPS, M05025,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 24-cv-1930-RJD |
| | ) |
| **WARDEN MITCHELL and** | ) |
| **C/O SCHLOTT,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Darius Phillips, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Hill Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint (Doc. 1), Phillips alleges that Defendants violated his First and Eighth Amendment rights related to alleged incidents of excessive force and retaliation. Phillips further alleges that Defendant Mitchell failed to intervene in the incidents described. Plaintiff seeks monetary and declaratory relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

1

money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

On August 10, 2022, Phillips alleges that Defendant Schlott approached him while he was on the phone with his family and Schlott hung-up the phone to provoke Phillips to assault him. (Doc. 1 at 3). Phillips did not react and instead decided to immediately write a grievance about the incident. On August 15, 2022, Defendant Schlott and two other officers entered Phillips' cell and Schlott verbally threatened that if Phillips wrote another grievance about Schlott he would "get hurt." (Doc. 1 at 3).

On August 30, 2022, Phillips and Schlott had an argument at his cell front about his ability to get ice per his medical permit. Schlott refused ice, "aggressively pushed" Phillips back into his cell and told him to write a grievance about it. (Doc. 1 at 3-4). Phillips claims that as he fell backwards, he slammed his ankle on the door. Schlott slammed his door shut and walked away. (Doc. 1 at 4). Phillips then repeatedly hit the button in his cell to seek medical attention for his ankle. He alleges he was in extreme pain and could not stand. He was escorted to the healthcare unit where he received an ace bandage and ice for his bruised and swollen ankle. (Doc. 1 at 4).

Phillips immediately wrote an emergency grievance about Schlott's statements and the shove. (Doc. 1 at 5). He also wrote a letter to Defendant Warden Mitchell about the situation. On an unspecified date following these actions, Phillips' cell door was opened, and he was instructed to report to internal affairs. (Doc. 1 at 5). He had to be assisted down the stairs because of his ankle injury. At internal affairs an officer took photos of his ankle and noted how badly swollen and bruised it was. (Doc. 1 at 5). On the same day as the internal affairs visit, Phillips was taken

to the healthcare unit where his foot was wrapped in another ace bandage, and he was given pain medication. (Doc. 1 at 6).

On September 3, 2022, Schlott entered the housing unit and began loudly banging on doors and yelling for inmates to come and get their ice. Schlott went to Phillips' cell and told him to get his ice. (Doc. 1 at 6). Schlott also reminded him that there were no cameras in the living unit which meant he could break more than Phillips' ankle. Schlott repeated the same behavior on September 4, 2022, at which time Phillips wrote a grievance about the situation. Phillips also wrote a second letter to Defendant Warden Mitchell. (Doc. 1 at 7).

Phillips asked for a status update on his grievance on September 11, 2022. (Doc. 1 at 7). On October 18, 2022, Schlott approached Phillips and said that if he continued filing grievances, then he would continue to receive tickets. Phillips alleges that this violated his First Amendment right because it was retaliation and harassment. He wrote another grievance about this incident. (Doc. 1 at 7). On November 6 and 15, 2022, Phillips made further inquiries about the status of his grievances. (Doc. 1 at 7-8).

On November 24, 2022, Schlott and two other officers entered Phillips' cell and threw his property all over the floor. Phillips requested a crisis team. (Doc. 1 at 8). On December 10, 2022, Schlott approached and said Phillips was "his personal bitch." (Doc. 1 at 8). On January 9, 2023, Phillips asked to talk to internal affairs about Schlott's ongoing harassment. (Doc. 1 at 8). On February 4 and 24, 2023, Phillips made additional queries about his pending grievances. Phillips alleges he did everything he could to exhaust his remedies and he also wrote multiple letters to Warden Mitchell but got no response. (Doc. 1 at 9).

Phillips faults Warden Mitchell for failing to intervene after being notified of the ongoing harassment by Schlott. (Doc. 1 at 10).

In support of the Complaint, Phillips submitted grievance documentation, counseling notes, and his letters to Warden Mitchell to demonstrate his efforts to resolve this at the prison level. Of note, a grievance that was filed around August 30, 2022, was not returned to Phillips with the Chief Administrative Officer's determination until May 20, 2024. (Doc. 1 at 15). At the time it was returned, the grievance officer's note stated that internal affairs had an open investigation regarding the grievance. (*Id.*).

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment excessive force claim against C/O Schlott for pushing Phillips back into his cell causing his ankle injury;**

**Count 2:** **First Amendment retaliation claim against C/O Schlott for his threats and actions directed to Phillips about his grievance activity;**

**Count 3:** **Eighth Amendment deliberate indifference or failure to intervene claim against Warden Mitchell for failing to respond to Phillips' correspondence and grievances about the ongoing issue with C/O Schlott.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### DISCUSSION

First, as to the Eighth Amendment claim, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). On a claim for excessive force, "the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

4

Factors in such an inquiry include the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner. *Id.* Phillips' allegations are sufficient to proceed against Schlott at this juncture because he alleges Schlott pushed him into his cell without justification, and that the push caused him to seriously injure his ankle.

Second, as to the retaliation claim, to prevail on a First Amendment retaliation claim, Phillips must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in Schlott's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Grievance activity is generally considered protected speech. Phillips alleges that after his initial grievance, Schlott encountered him on many occasions and made threats about his grievances. Schlott allegedly stated that the grievances were the reason for his actions. For example, on August 15, 2022, Schlott told Phillips that if he continued to write grievances he would "get hurt," and about two weeks later Schlott allegedly pushed Phillips into his cell hurting his ankle. Phillips also alleges that in October of 2022, Schlott told him that if he kept writing grievances or saying Schlott assaulted him then Schlott would continue to write him tickets. (Doc. 1 at 7). This suggests Schlott was disciplining Phillips for engaging in protected activity by filing grievances. On these facts, Phillips has pled a sufficient retaliation claim against Schlott.

Third, the claim against Warden Mitchell for failure to intervene or generic deliberate indifference may proceed as pled. Phillips alleges that he informed Mitchell via letters and grievances that he was being continuously harassed by Schlott, but Mitchell turned a blind eye and

neither responded nor assisted him.  Although not every piece of correspondence to a warden is sufficient to invoke personal responsibility, here it appears that Phillips repeatedly sent detailed correspondence to alert Mitchell to his plight and got no response whatsoever.  This is sufficient to proceed at this juncture.

### MOTION FOR RECRUITMENT OF COUNSEL

Phillips' Motion for Recruitment of Counsel (Doc. 3) is **DENIED** at this time without prejudice.  There is no constitutional or statutory right to counsel in federal civil cases.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).  In determining whether to recruit counsel, the Court considers two factors— whether Plaintiff has made reasonable attempts to recruit his own counsel; and whether he is competent to represent his own interests. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).  Phillips has not provided any proof that he attempted to recruit his own counsel in this matter, so his Motion (Doc. 3) must be denied without prejudice.  The Motion also requests help because Phillips is not familiar with legal terminology and does not fully understand civil law.  Although these factors are noted, Phillips' complaint is sufficient as pled to proceed on multiple claims.  At this early stage in the litigation it is difficult to judge the complexity of the case and to determine if counsel is needed.  *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged.").  If Phillips later renews his motion, he should include proof he tried to contact at least three attorneys, and he should also give a more detailed description about what in this case is difficult for him.

**DISPOSITION**

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive initial screening as described above against C/O Schlott and **Claim 3** survives against Warden Mitchell.

The Clerk of Court is **DIRECTED** to prepare for Defendants Schlott and Mitchell: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Phillips' Motion for Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**DATED: 10/28/2024**

*s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires

the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.