IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARIUS PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-1930-RJD |
| ) | |
| WARDEN MITCHELL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**[1]

This matter comes before the Court on Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 32). For the reasons set forth below, Defendants' motion is **GRANTED in part and DENIED in part**.

**Background**

Plaintiff Darius Phillips, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Hill Correctional Center, brought this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff alleged that Defendants violated his First and Eighth Amendment rights related to alleged incidents of excessive force and retaliation while Plaintiff was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1).

---

[1] This matter has been assigned to the undersigned to conduct any and all proceedings, including trial and final entry of judgment, through the parties' full consent pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 27).

Specifically, Plaintiff alleges that on August 10, 2022, Defendant Schlott approached Plaintiff while he was on the phone with his family, and Schlott hung up the phone to provoke Plaintiff to assault him, for which incident Plaintiff filed a grievance. (Doc. 1 at 3). On August 15, 2022, Defendant Schlott and two other officers entered Plaintiff's cell and Schlott verbally threatened that if Plaintiff wrote another grievance about Schlott, he would "get hurt." (Doc. 1 at 3). On August 30, 2022, Plaintiff and Schlott had an argument at the front of his cell about his ability to get ice per his medical permit. Schlott refused ice, "aggressively pushed" Plaintiff back into his cell, and told him to write a grievance about it. (Doc. 1 at 3-4). Plaintiff fell backwards and slammed his ankle on the door. Schlott slammed his door shut and walked away. (Doc. 1 at 4). Plaintiff was escorted to the healthcare unit for his ankle injury, and thereafter, he wrote an emergency grievance about Schlott's statements and the shove. (Doc. 1 at 5). He also wrote a letter to Defendant Mitchell about the situation and reported it to internal affairs. (Doc. 1 at 5).

On September 3, 2022, Schlott entered the housing unit and began loudly banging on doors and yelling for inmates to get their ice. Schlott went to Plaintiff's cell and reminded him that there were no cameras in the living unit, which meant he could break more than Plaintiff's ankle. (Doc. 1 at 6). Schlott repeated the same behavior on September 4, 2022, at which time Plaintiff wrote a grievance and a second letter to Defendant Mitchell. (Doc. 1 at 7).

Plaintiff asked for a status update on his grievance on September 11, 2022. (Doc. 1 at 7). On October 18, 2022, while Plaintiff was on his way to chow, Schlott approached him and said that if he continued filing grievances, he would continue to receive tickets. Plaintiff wrote another grievance about this incident. (Doc. 1 at 7). On November 6 and 15, 2022, Plaintiff made further inquiries about the status of his grievances. (Doc. 1 at 7-8).

On November 24, 2022, Schlott and two other officers entered Plaintiff's cell and threw his property all over the floor. Plaintiff requested a crisis team. (Doc. 1 at 8). On December 10, 2022, Schlott approached and said Plaintiff was "his personal bitch." (Doc. 1 at 8). On January 9, 2023, Plaintiff asked to talk to internal affairs about Schlott's ongoing harassment. (Doc. 1 at 8). On February 4 and 24, 2023, Plaintiff made additional queries about his pending grievances. Plaintiff faults Warden Mitchell for failing to intervene after being notified of the ongoing harassment by Schlott. (Doc. 1 at 10).

After the threshold review of the Complaint, Plaintiff was allowed to proceed on the following claims:

**Count 1:** Eighth Amendment excessive force claim against Defendant Schlott for pushing Plaintiff back into his cell, causing his ankle injury;

**Count 2:** First Amendment retaliation claim against Defendant Schlott for his threats and actions directed to Plaintiff about his grievance activity; and

**Count 3:** Eighth Amendment deliberate indifference or failure to intervene claim against Warden Mitchell for failing to respond to Plaintiff's correspondence and grievances about the ongoing issue with C/O Schlott.

(Doc. 17, pp. 4-9).

On February 27, 2025, Defendants filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 32). Defendants argue that none of the grievances Plaintiff filed relating to his claims were properly exhausted. Plaintiff filed a counter-motion, which the Court construes as a response to Defendants' motion. (Doc. 33). Plaintiff argues that he filed grievances as to all his claims, but the officials in Pinckneyville failed to provide him with a response for over two years. *Id.* Plaintiff further pointed to the exhibits he attached to the Complaint, which he argues demonstrate his efforts to fully exhaust his administrative remedies. Defendants replied, substantially restating the arguments set forth in their motion. (Doc. 36).

*Pavey Hearing*

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on May 8, 2025. (Doc. 37). Plaintiff testified that he submitted four grievances relating to the claims he raised in his Complaint. Plaintiff stated that he first filed a grievance regarding the phone incident of August 10, 2022, with Defendant Schlott, which was also described in the Complaint. Plaintiff's testimony was originally somewhat inconsistent as to the day that he filed this grievance, but he later confirmed that it was written on August 10, 2022. Plaintiff stated that he never received a response from his counselor on that grievance.

Plaintiff testified that he also filed a grievance on August 30, 2022, regarding the incident with Defendant Schlott in Plaintiff's cell on that same day, when Schlott allegedly slammed the door on Plaintiff's ankle. Plaintiff argued that he properly submitted his grievance at the first and second levels of review but did not receive a response from the Pinckneyville Chief Administrative Officer ("CAO") until nearly two years later, and after he was already transferred to Hill. Plaintiff explained that while at Hill, his Pinckneyville correspondence was consistently delayed. Plaintiff explained that when he received the Grievance Officer's response on that grievance, he notarized it and sent it to the ARB. Plaintiff stated that he did not recall ARB's exact response, but it was along the lines of the grievance being denied because of untimeliness issues.

Plaintiff also testified that he recalled filing a grievance on or about September 4, 2022, regarding the alleged threat and intimidation incident with Defendant Schlott on September 3 and September 4, 2022. Plaintiff stated that he did not receive the CAO's response to that grievance until around July 2023, at which time he immediately sent the grievance to the ARB. However, the ARB denied Plaintiff's grievance because it was submitted for review more than 30 days after the CAO's response to it.

Plaintiff also testified that he filed another grievance dated October 18, 2022, regarding Defendant Schlott's retaliation against Plaintiff on October 17, 2022, when Schlott allegedly issued Plaintiff a false disciplinary report and threatened him for his grievance activity. As with the grievance dated September 4, 2022, Plaintiff testified that he did not receive the CAO's response until around July 2023, at which time he immediately sent it to the ARB. That grievance was also denied by the ARB for being submitted for review more than 30 days after the CAO's response to it.

As to Count 3 of the Complaint against Defendant Mitchell, Plaintiff testified that he sent Mitchell multiple letters to advise him of Schlott's misconduct. Plaintiff, however, later confirmed that he did not file a grievance against Mitchell. Plaintiff explained that he attached all relevant grievances and correspondence to his Complaint. Defendants did not call any witnesses.

## Analysis

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In

considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal,* 745 F. 3d 232, 236 (7th Cir. 2014). Because exhaustion of administrative remedies is an affirmative defense, the defendants bear the burden of proof. *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004); *Jackson v. Esser*, 105 F.4th 948, 956 (7th Cir. 2024).

*Exhaustion Requirement*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by

a Grievance Officer who must render a written recommendation to the CAO — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.*

Further, to satisfy the requirement of exhaustion of administrative remedies, the grievance must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint. ILCS § 504.810(c). So long as the "prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies." *Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842–43 (S.D. Ill. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

At the same time, inmates are only required to exhaust those administrative remedies that are available to them. *Dole*, 438 F.3d at 809. Prison officials may not utilize the exhaustion process to unfairly prejudice inmates, and an administrative remedy will be deemed "'unavailable'

if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809 (quoting *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002); *Dale,* 376 F.3d at 656).

The Supreme Court has set forth several examples of ways in which a grievance system might be unavailable, including if the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake*, 578 U.S. 632, 639–40, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). "An unreasonable delay in responding to a properly filed grievance constitutes a scenario in which administrative remedies are unavailable for exhaustion purposes." *Vargas v. Wexford Health Sources, Inc.*, No. 18-CV-06068, 2024 WL 1376369, at *6 (N.D. Ill. Mar. 31, 2024) (citation omitted). However, showing an affirmative misconduct on behalf of the prison is not necessary. Rather, "the proper focus" is on whether the inmate was unable to follow the proper procedure for fully exhausting a grievance due to no fault of his own. *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). It is the defendant's burden to show "beyond dispute" that the administrative "remedies were available." *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).

**Discussion**

Based on the parties' filings and Plaintiff's testimony at the hearing, there are only four grievances relevant to Plaintiff's claims: Grievance #2830-10-22, dated August 10, 2022; Grievance #2420-8-22, dated August 30, 2022; Grievance #2477-09-22, dated September 4, 2022; and Grievance #2951-10-22, dated October 18, 2022. The two former grievances appear to relate to Count 1 of the Complaint, while the two latter appear relevant to Count 2. The Court will address the issue of exhaustion of administrative remedies as it relates to each count of the Complaint in order.

**Count 1:** Eighth Amendment excessive force claim against Defendant Schlott for pushing Plaintiff back into his cell on August 30, 2022, causing his ankle injury.

Plaintiff's first relevant grievance as to Count 1 of the Complaint appears to be Grievance #2830-10-22, dated August 10, 2022. (Doc. 32, p. 4; Doc. 1, p. 12). Plaintiff attached to the Complaint a printout of his Cumulative Counseling Summary showing that the Pinckneyville CAO received that grievance, which was marked as an emergency, on October 11, 2022. (Doc. 1, p. 12). However, neither party submitted the body of the grievance or any response thereto for the Court's review. Plaintiff testified that he grieved therein the incident with Defendant Schlott earlier that day, when Schlott approached Plaintiff while he was on the phone with his family, and he hung up the phone to provoke Plaintiff to assault him. However, Count 1 of the Complaint raises a claim for Defendant Schlott's use of excessive force on August 30, 2022. Because Grievance #2830-10-22, dated August 10, 2022, predates the complained-of incident in Count 1 and only relates to background information, the Court finds that it could not have provided the institution with adequate notice of Plaintiff's excessive force claim.

Plaintiff's second grievance that appears to be relevant to Count 1 is Grievance #2420-8-22, dated August 30, 2022. (Doc. 1, p. 16; Doc. 32-3, pp. 3-4). Therein, Plaintiff grieves the incident of August 30, 2022, when Defendant Schlott "aggressively pushed" Plaintiff back into his cell, causing his ankle to get injured, and then further slammed the door of the cell on Plaintiff's ankle. Plaintiff asked to receive a financial settlement and that Schlott be fined, or that Plaintiff be transferred to another facility. The Counselor denied the grievance on September 26, 2022, finding Plaintiff's allegations unsubstantiated. (Doc. 1, p. 16). The Grievance Officer received the grievance on September 28, 2022, but did not issue a decision until May 20, 2024, nearly two years after its filing. (Doc. 32, p. 3; Doc. 32-3, p. 13). The Grievance Officer recommended that

the Grievance be deemed "resolved" because the CAO instructed that the grievance be referred to Internal Affairs, and Internal Affairs had a pending investigation regarding this grievance. (*Id.*). The CAO concurred on that same day. (*Id.*).

Defendants argue that Plaintiff never appealed this grievance with the ARB. However, Plaintiff testified that he did not receive the Grievance Officer's response until more than 30 days after the CAO's decision was issued. He further testified that he sent the grievance to the ARB, but it was denied on procedural grounds.

The Court finds that Grievance #2420-8-22, dated August 30, 2022, contained sufficient information to alert the institution of Plaintiff's claim of excessive force against Defendant Schlott as asserted in Count 1 of the Complaint. Further, the Court finds Plaintiff's testimony regarding the delay in receiving the Grievance Officer's response to be credible. The Court further notes that Defendants failed to provide any admissible evidence to counter Plaintiff's testimony that he received the CAO's response more than 30 days after it was issued.[2] The Court further finds that the nearly two-year delay in reaching a decision on the second level of review, coupled with the failure to provide Plaintiff with a copy of CAO's response in time for appeal to the ARB, rendered the administrative remedies unavailable as to Count 1 of the Complaint. *See Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018) ("the proper focus is not whether the defendants engaged in affirmative misconduct, but whether [the plaintiff] was not able to file the grievance within the time period through no fault of his own."); *Dole,* 438 F.3d at 811 (holding that when a grievance

---

[2] While Defendants attached to their Motion what appears to be a log of Plaintiff's Grievance History (Doc. 32-3, p. 41) as well as a separate log of what appears to be Plaintiff's appeals with the ARB (Doc. 32-3, p. 43), they failed to provide any affidavit or testimony as to the admissibility of such record into evidence. "In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including *properly authenticated and admissible documents*." *Hiler v. Pollard*, No. 07-C-863, 2009 WL 188027, at *1 (E.D. Wis. Jan. 27, 2009) (emphasis added).

"remains unresolved through no apparent fault" of the inmate, the administrative remedies are rendered unavailable). Accordingly, Defendants have failed to satisfy their burden of proof to show that the administrative remedies were available to Plaintiff or that Plaintiff failed to comply with the exhaustion requirements due to his own fault.[3]

Therefore, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 32) is **DENIED** as to Count 1 against Defendant Schlott.

**Count 2:**     First Amendment retaliation claim against Defendant Schlott for his threats and actions directed to Plaintiff about his grievance activity.

Plaintiff filed two grievances relating to his allegations in Count 2 of the Complaint regarding Defendant Schlott's retaliatory threats and harassment directed to Plaintiff about his grievance activity. First, Plaintiff filed Grievance #2477-09-22, dated September 4, 2022. (Doc. 1, pp. 18-19; Doc. 32-3, pp. 1-2). Therein, Plaintiff grieves staff conduct, and specifically two incidents that occurred on September 3, 2022, and on September 4, 2022. Plaintiff described that on September 3, 2022, while Schlott was distributing prescribed ice to inmates, he came to Plaintiff's cell, yelled loudly, "If only it was no cameras," and told Plaintiff that no matter how long Plaintiff would stay there, it would be a "living hell." (*Id.*). The next day, on September 4, 2022, Schlott again banged Plaintiff's cell door and threatened Plaintiff while distributing ice. (*Id.*). Plaintiff also referenced in the grievance the prior incident of August 30, 2022, and explained

---

[3] The Court further notes that at the time the Grievance Officer's response was issued, Plaintiff had already been transferred to Hill, as he had requested in his grievance. The Grievance Officer did not deny Plaintiff's grievance but rather deemed it "resolved." Accordingly, the Court questions whether Plaintiff was required to further appeal Grievance #2420-8-22, dated August 30, 2022, with the ARB. *See Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002) ("Requiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic."); *see also Hardy v. Aguinaldo*, No. 02 C 3614, 2002 WL 31017611, at *4 (N.D. Ill. Sept. 10, 2002) (finding that an inmate was not required to appeal with the ARB a grievance when the inmate's requested relief was substantially satisfied and the grievance was deemed resolved).

that Schlott's misconduct was in retaliation for Plaintiff's prior grievances and report with Internal Affairs. (*Id.*).

The Counselor responded on September 26, 2022, denying the grievance as being unsubstantiated. (Doc. 1, p. 18). The Grievance Officer received the grievance on September 28, 2022, and reviewed it on September 30, 2022. (Doc. 1, p. 20). He recommended that the Grievance be denied because no camera footage was available. (*Id.*). The CAO concurred on October 3, 2022. Per the ARB's Grievance Record, the ARB received the grievance on July 14, 2023, and denied it because it was received more than 30 days following the CAO's decision. (Doc. 32-3, p. 43). However, Defendants did not actually provide a copy of the ARB's response or Plaintiff's grievance with the ARB's stamp on it.

Plaintiff further filed Grievance #2951-10-22, dated October 18, 2022, wherein he grieved the incident of October 17, 2022, when Schlott allegedly issued a false disciplinary report against Plaintiff for concealing his identity. (Doc. 1, p. 22; Doc. 32-3, pp. 16-23). Plaintiff explained that the false disciplinary report was in retaliation for Plaintiff filing a grievance against Schlott for the August 30, 2022, incident. (*Id.*). The Counselor denied the grievance on October 19, 2022. (Doc. 1, p. 22). The Grievance Officer received the grievance on November 9, 2022, and reviewed it on November 23, 2022. (*Id.*). It was recommended that the grievance be denied because the disciplinary report was properly written and there was sufficient evidence to support the decision finding Plaintiff guilty of the infraction. (*Id.*). The CAO agreed on November 23, 2022. (*Id.*). The ARB received the grievance on July 10, 2023, and denied it on July 14, 2023, noting the appeal was received "30 days past the date of the CAO's decision." (Doc. 32-3, pp. 42, 44-45).

At the hearing, Plaintiff testified that due to his transfer to Hill, he received the Grievance Officer's responses on both grievances more than thirty days after their issuance. He testified that

he immediately proceeded with notarizing the copies and sending them to the ARB. Defendants did not provide any admissible evidence countering Plaintiff's testimony.

The Court finds that Grievance #2477-09-22, dated September 4, 2022, and Grievance #2951-10-22, dated October 18, 2022, contain sufficient information to alert the institution of Plaintiff's retaliation claim asserted in Count 2 of the Complaint. The Court further finds Plaintiff's testimony regarding the delay in the receipt of the Grievance Officer's responses to those grievances credible. In the lack of any admissible evidence countering Plaintiff's testimony, the Court finds that Plaintiff's failure to timely appeal the denial of his grievances at the second level of review was due to no apparent fault of his own. Accordingly, the Court concludes that the administrative remedies were rendered unavailable to Plaintiff pertaining to Count 2 of the Complaint. *See Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018) ("the proper focus is not whether the defendants engaged in affirmative misconduct, but whether [the plaintiff] was not able to file the grievance within the time period through no fault of his own."); *Dole,* 438 F.3d at 811 (holding that when a grievance "remains unresolved through no apparent fault" of the inmate, the administrative remedies are rendered unavailable). Therefore, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is **DENIED** with respect to Count 2 of the Complaint against Defendant Schlott.

**Count 3:**  Eighth Amendment deliberate indifference or failure to intervene claim against Defendant Mitchell for failing to respond to Plaintiff's correspondence and grievances about the ongoing issue with Defendant Schlott.

As to Count 3 of the Complaint against Defendant Mitchell, the record as a whole did not contain any related grievance. Plaintiff testified that he wrote to Defendant Mitchell on several occasions, but he did not point to a specific grievance he filed regarding Defendant Mitchell's alleged failure to respond to Plaintiff's letter or otherwise take measures to protect Plaintiff from

Defendant Schlott's alleged retaliatory conduct. Further, Plaintiff testified that he had attached to his Complaint all relevant grievances, but none of those grievances, or of the ones Defendants produced, pertained to Defendant Mitchell's alleged misconduct. Accordingly, the Court finds that Plaintiff did not exhaust his administrative remedies as to his Eighth Amendment deliberate indifference or failure to intervene claim against Defendant Mitchell. Therefore, Count 3 of the Complaint is hereby **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to terminate Defendant Mitchell and to enter judgment accordingly at the close of the case.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 32) is **GRANTED in part and DENIED in part**. Count 3 of the Complaint against Defendant Mitchell is hereby **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to terminate Defendant Mitchell and to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED: May 12, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**